Pipe and Foundry Company, LLC v. Michael Holland I don't think we're ready. So, Mr. Parrish, can you hear me? I can hear you just fine, Your Honor. Okay. Can you hear me? Yes, Your Honor. I can hear you well. Very good. Mr. Parrish, please speak with us. United States Pipe and Foundry versus Holland. May it please the Court. Thank you, Your Honor. Ashley Parrish for J.W. Lamont on behalf of all the appellants. I'd like to reserve five minutes for rebuttal. Before starting the argument, let me just first thank the Court and its staff for accommodating me for my argument. It's much appreciated. Thank you. In this case, the Court of Appeals failed to apply the Vanquishing Codes plain terms and find that a clear exception. It seems to me there is another reason altogether that you cannot win on this IEP obligation. And that is because it is true that the trustee had, as of the discharge in 1995, the trustee had a potential claim against you because you joined them in real life. And you were liable to continue the IEP just like Walt was. The problem is, it seems to me, that is an equitable claim. And an equitable claim does not qualify as a claim under 101.5 unless it gives rise to a right to payment. And it seems to me it does not give rise to a right to payment until one of two things. There is a breach, which happened only in 2015 or 2016, and that is post-confirmation conduct. Or, even if you consider that the 1992 plan, the statutory requirement that when an IEP is terminated, then there is a different statutory obligation that gives rise to a payment of the 1992 plan. It seems to me that is not a remedy for the breach of the obligation to maintain an IEP, but rather a separate statutory requirement that is triggered at that point and therefore does not amount to a quote, right to payment. And therefore, the equitable right is not our claim. In other words, all you had as of 1995 was maybe a right to declaratory judgment that your client, the related parties, along with Walter, should also maintain the plan. To state it one other way, if the trustee had made a proof of claim in the bankruptcy in 1995, I think the only thing that could have happened was that the plan would have provided that not only Walter, but also the related parties would be required to maintain the plan. And that is a mere equitable right. Your Honor, thank you. You obviously have a number of questions, but let me start with your last question, which is to highlight that the reason why the bankruptcy code requires the trustee to file a type of claim is for these issues to all be resolved together in the bankruptcy. And the trustee here honors an administrative claim against Walter and Reggie but did not file it against all the other parties in the bankruptcy. He could have and should have, but it would have been easy to do. The second thing I would say, Your Honor, is you've anticipated my argument, but with respect, we believe that it is the type of equitable claim that naturally falls within a claim because it results in right to payment. Because the three funds, the combined fund, the 1992 fund, and the IEP work together. The 1992 fund is a backstop, as you found in the original Walter and Reggie case that we cited in our briefs, that when IEP obligations go away because they can't be funded, it collapses into the 1992 fund as a backstop. And so this is all just about the right to get money, whether it's from the statutory obligators, operators in the first instance, or the related parties in the second instance. And the only way that you can resolve those things is to look at them all together. And that's why for the last 20 years, my clients have been operating with the understanding that they sold their businesses to new clients and so forth, that these obligations were discharged in bankruptcy. Yeah, it seems to me that the trustees were right, that the obligation to maintain an IEP is not a right to payment. They would not have a cause of action to enforce that obligation. Is that right? I think that's what I realize. It's very hard for me to understand what they're actually arguing, but I realize on a theoretical level, they're trying to say it's just equitable, but at the end of the day, it has to collapse to maintain a payment for it to be meaningful. In all honesty, I know that you're trying to apologize for the difficulties inherently, but I do want to emphasize that I don't think the trustee has any answer to the fall circuit's decision in Lackley or the premise of his court's lack of energy decision, which is that these types of obligations can be terminated on the basis of Lackley, they can be split free and clear. And just under a response to that in any of the cases, which I think, Chief Judge Pryor, underscores your claim in the argument at the start, and why I said that you summarized it very well. Okay. You've saved five minutes for rebuttal, Mr. Parrish. Hopefully we can hear Mr. Shusher a little bit better, but I think we got the essence of your argument, Mr. Parrish. Thank you. Thank you, Your Honor. Ms. Shusher. Thank you, Your Honor. May it please the Court, are you able to hear me? Yes, it would help if maybe you don't turn it up a little bit or speak up a little bit. Yes, I hear you better. Okay. I'll do my best to project. I'm Stephanie Shusher here on behalf of the appellees, the trustees of the Co-op Fund. A discharge order is necessarily backward-looking, as the Court recognized in the earlier question. Claims that arise based on pre-discharge conduct can be discharged, but post-bankruptcy conduct is fair game, right? A discharge order is backward-looking. That's a settled principle is why statutory claims do not arise all at once. As a single contingent claim, the moment a statute is enacted. That would give an emerging debtor far more than a fresh charge. It would be a forward-looking license to violate the law and ignore statutory duties. The same settled principle is why the undeniably statutory claims You need to speak a little bit more directly into the microphone, Ms. Shusher. And a little slower. And a little slower. And a little more articulate. Clear articulation. The same settled principle is why the statutory COLAC claims that the trustees assert and decompose, all which are based on appellant conduct in and after 2016, are beyond the scope of the 1995 discharge order. Statutory claims in the bankruptcy set arise at the time the debtor engages in a conduct that triggers disliability under the statute. That is what case law teaches when it comes to all manner of statutes. Like statutes that impose continuing obligations, such as anti-pollution and non-discrimination statutes. And statutes that impose periodic obligations, like tax laws, on particular activities in a particular period. It seems to me that our earlier decision in Henry Walsh's energy necessarily decided that these COLAC obligations are destructible. Because we concluded that they exist before the premiums come due. And what am I misunderstanding there?  But it seems to me that a necessary premise of this is that the COLAC obligations exist before the premiums come due. I would disagree with that as being a necessary premise for the role that you've offered, Your Honor. Walter held that the obligation to pay in the future qualified under the statutory definition in Section 1114 of retiring benefits. It said nothing about whether the claim would exist and whether we're dealing with a particular type of claim, be it pre-petition, administrative expense, or post-petition. And in fact, it wasn't that Walter Ford held that. But that's a fixed liability though, right? So if the obligation exists before the premiums come due, then there's necessarily a fixed liability, even though the amounts are still pending. Correct, Your Honor. But it's not just the universe of other entities that might have to comply in the future that's fixed by the statute. The COLAC requires that the debtor or the covered entity engage in this liability-triggering conduct in the period. For the combined fund that's being in business during a particular fund year, and for the 1992 plan, that's holding assets and having distributable retirees enrolled during a particular plan month. If neither of that conduct is engaged in during the statutory period, then there is no claim that arises. We have no right to assess and there is no premium that is due from the covered entity. Let me ask you one more question. Wholly aside from our prior opinion in Walter, it seems to me that the combined fund obligation, the future premiums, was in fact fixed. Wholly aside from what we might have said in Walter, even if Walter did not address the definition of a vote claim. And the reason is that the related parties were fixed as of a certain date, I think sometime in 1992. And the orphan retirees beneficiaries who were assigned to the combined fund were also fixed. They had to be fixed before October 1, 1993, which is of course before the 1995 discharge. So we had the beneficiaries fixed. We had the related parties were already determined to be related parties. So the liability, it seems to me, was fixed and dependent upon pre-petition conduct, not post-confirmation conduct. And there was nothing that had to be done to alter that fixed liability. The only thing that the amount might vary, frankly, as I understand it, the only way it would vary is if some of the beneficiaries died or if the medical expenses increased and the amount changed. So it seems to me that that was fixed and nothing had to happen to alter that. Unlike the, there's no in-business requirement, notwithstanding what you said, that requirement applied only at the time of the fixing, not at the time of any continuing obligation to pay premiums, which is unlike the IIP situation. How do you respond to that? Certainly, Your Honor, thank you. I think for one thing in your summary that I disagree with is the absence of the in-business requirement. Of course, I've looked at the language of 9706 in the in-business requirement and the references to 9706 and 9704 to hold that there is an in-business requirement. Liability is limited to covered operators and related persons who are in-business. That's why the trustees don't go after companies that go out of business for combined funds premiums. The Supremes aren't recognized that in Eastern Enterprises. The 10th Circuit recognized that much in In-Range Funding Sides and the 2nd Circuit has recognized it in the Strategic Area and the older full cases. There are other provisions within 9704, Your Honor, that would not make sense if simply a fixed liability was more like payment on a strong debt. If, for example, in 9704-2, the Act provides that the annual premium, that's annually, is to be paid in 12 monthly installments. That provision wouldn't make sense if it was merely a fixed liability installments going on until liabilities fully extinguished and are no more beneficiary. To the extent I can hear you, I think you're talking about the tax periodic payment idea. And I do not, at least it seems to me tentatively, that that doesn't work, even if it is a tax, which it may well be. I'm not in the low with this. Even if it's a tax, it's not a tax like an income tax, which depends on earning income in the future years. It's not a tax like a sales tax, which depends upon sales in those future years. And it's not a tax like property tax, which depends upon continuing to own the property. This, as I said before, the liability was fixed. There was absolutely nothing to change that except that it'd be survival of the beneficiary or the amount of the medical cost. How do you respond to that? Thank you, Your Honor. And I apologize if you're not hearing me. I was focused on not the tax argument, but the fact that the combined fund obligation is limited to entities who are in business. And even if you don't read an in-business requirement into it, contrary to the way the Supreme Court attempted second circuit did, at the very least, it is a requirement that the entity retain assets, just like the 902 plan, in order to be liable for compliance with the premium each year. And that is very similar to property taxes, where property is held before, but each year that an entity owns property that's being taxed, a new and separate claim for property tax arises. It's the same thing with the combined fund premium. And again, for the 902 plan, the liability triggering conduct is both holding assets and having distributable retirees involved in the plan. And this is what the other circuits have recognized that collect premiums, that they arise periodically. In the 10th circuit, and in Rick's case that I mentioned, public claims for pre-bankruptcy premiums arise pre-petition, and so they necessarily have the status of general unsecured claims, while claims that are for mid-bankruptcy premiums arise during bankruptcy, post-petition, and so are treated differently. They have priority status of administrative expenses incurred by the estate. In drawing that line between claims that arise pre- and post-petition, the 10th circuit considered and expressly rejected the very argument that I commented back here, that all claims for collect premiums arose when the statute was enacted. The second circuit necessarily rejected the same argument and premise in Chateau Bay. It drew the line between mid-bankruptcy premiums and post-bankruptcy premiums, and expressly held post-bankruptcy premiums assessed after bankruptcy, like premiums assessed in 2016 here, are non-dischargeable obligations of the reorganized setter. Turning back to Walter for a moment, Judge Meyer, because I wanted to make sure I completed my answer to your question. Walter didn't have to just hold that full-act obligations are dischargeable. What Walter held is that full-act obligations are a specific kind of benefit, a retiree benefit under Section 1114 of the Bankruptcy Code. And the Bankruptcy Code is very clear that retiree benefits can only be modified in bankruptcy through the procedures in Section 1114. And so there's strict procedures requiring the debtor to show that the modification is necessary to the reorganization. The Bankruptcy Code does not allow the confirmation of a plan. Section 1129A13 does not allow the confirmation of a Chapter 11 plan where retiree benefits have not been modified pursuant to Section 1114. And then turning briefly to the IEB obligation, the trustee's role to enforce the obligation if it can be considered a claim at all did not arise until the utility breached the ongoing statutory duty to maintain an IEB in 2016. When staff instead impose continuing obligations, the liability triggering conduct is a breach of the continuing duty itself. The Americans with Disabilities Act is a good example. From the moment the ADA became law in 1991, covered entities have an ongoing duty to not discriminate. But for bankruptcy purposes, an ADA claim arises only when a covered entity discriminates. So each act of discrimination, which is each breach of the statutory duty, gives rise to a new and separate bankruptcy claim. So if a debtor discriminates before bankruptcy, the claim is dischargeable. But the debtor is on the hook if it discriminates again or for the first time post-bankruptcy. That is fully consistent with the notion that bankruptcy gives debtors a fresh start. The IEP obligation is very clearly a continuing one. Section 9711 defines the obligation as one that continues for as long as the covered entity is in business. The appellant breached that duty in 2016 when they refused to maintain an IEP, even though they are in business. That is when a trustee's claim, if it's a claim at all, arose. But as you noted earlier, we dispute that it is a claim at all because a breach of an IEP obligation does not itself give rise to a right to payment to the fund. A breach of the IEP obligation does not, there's no option for us to accept a payment in lieu of a covered entity in an IEP, and there's no option for covered entities to pay all at once in advance. It's a discreet obligation. And just to touch briefly on the argument that the Clause of Action provision in 9721 would not give a right of action for the IEP obligation if there was not a right to payment. The recent circuit very recently held in the Archibald case that the right to payment referred to in 9721 and throughout the full act can refer to payments made not just to the trustees but the third parties. The IEP obligation certainly entails an obligation for covered entities to make payments to the beneficiary, their individual employer. Your Honor, if you'd like to have any further questions, you would ask the speculate in the lower court's judgment to be affirmed. Thank you. Mr. Harris, you say, let's give it our best shot. Okay, thank you, Your Honor. I'm hoping you're coming through. A few things that might help you. Judge Anderson, the problem with her argument is Piper, and Piper makes the point, this court made the point in Piper that if there's a relationship between the conduct and the claimant before confirmation, that gives rise to the claim. And so you're exactly right that at the time in 1993, the beneficiaries, the claimants were fixed, the liable parties were fixed, and the nature of the obligation was fixed, which is completely different from the ADA claim that she's suggesting in her example. The only thing I'm saying, Your Honor, is that that is true for all three, both the combined funds, certainly the 1992 funding, and also the IEP, because that relationship between the beneficiaries and the conduct all existed. The second thing I would say is that if you step back for a minute, the in-business requirement makes no sense. If they're not regulating, Congress is not regulating in-business, if regulating the conduct of being, in operating home life, and agreeing to provide benefits to minors, that retroactive, and so their opposing counsel cited the Supreme Court, the whole case was premised on the idea that these were backward-looking obligations, not forward-looking obligations. If she were correct, that decision would have been completely different. Along those same lines, if you take a look at the in-business requirement, it does not appear in the 1992 plan at all. You are correct, Judge Anderson, that in the combined fund, it is only used to initially serve the operators, and as we discussed in the IEP, it is clear that it's a continuing obligation as long as you remain in business. The other case that she cites is our case, because what it says there is that, yes, no in-business requirement from 1992, there is an in-business requirement for the other obligations, but this is a terminating condition, and you can't turn a terminating condition into a triggering condition, and when you look at the statute, it's clear that Congress is not saying, if and only if you remain in business, you in the future will be obliged. Congress said, you have this obligation, it's done in several, and it shall continue until, and one of the ending events is that you're no longer around. And the last thing I would say is that opposing counsel focused on the administrative priority cases, the first thing you know is those cases cannot be reconciled with district decision in Walter Energy, or with M. Ray Lockheed. The second thing is in all those cases, they were addressing a unique situation where the co-op liabilities arose after the petition was filed, left here, and they were addressing in that context, the priority, and all she could rely on is passing language with no reasoning or explanation, and her fundamental argument is you can't take that as passing language and rely on it and put as much weight on it as she wants when you have non-point decisions like Lockheed that affirmatively rejects her position. I really appreciate the time, I'm sorry this has been difficult for the Pope, and I'd be grateful to answer any questions you might have. Any questions? Thank you, Mr. Parrish. We have your case, and we'll move to our next question. Thank you. We have the attorneys here for Johnson v. Lewis. We're going to turn off the screen and then I'll ask you to come forward. Give us a second here. Mr. Johnson. Mr. Johnson. Thank you.